UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL PATRICK WHORMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01261-TAB-TWP |
| | ) | |
| HONDA MFG. OF GREENSBURG, IN, | ) | |
| HONDA MFG. OF INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Defendant Honda Development & Manufacturing of America, LLC[1] seeks summary

judgment in favor of Honda and against Plaintiff Michael Whorms.  Whorms, proceeding *pro se*,

alleges Honda terminated him based on his race and national origin, in violation of Title VII of

the Civil Rights Act of 1964, and subjected him to a hostile work environment.  Summary

judgment is appropriate.  Due to Whorms' failure to respond to Honda's requests for admission,

the undisputed facts show that Honda did not discriminate against him based on his race or

national origin.  Moreover, he cannot establish a *prima facie* case of discrimination.  Nor can

Whorms prevail on his hostile work environment claim, as he cannot prove the alleged

harassment was so severe or pervasive as to alter the condition of his employment.  Therefore,

Honda's motion for summary judgment is granted.  [Filing No. 51.]

---

[1] Defendant states that it has been improperly sued as Honda Mfg. of Greensburg, IN and refers
to itself as simply "Honda" throughout the briefing.  [Filing No. 51, at ECF p. 1.]  Defendant's
appearance and the Case Management Plan both identify Defendant as Honda Development &
Manufacturing of America, LLC, improperly sued as Honda Mfg. of Greensburg, IN, with no
reference to Honda Mfg. of Indiana.  [Filing No. 17; Filing No. 36.]  Thus, the Court also simply
refers to a singular remaining Defendant, Honda, throughout this order.

## II.     Background

### A.     Procedural Background

Whorms filed a complaint alleging that Honda terminated him based on his race (African American) and national origin (Jamaican) in violation of Title VII.  [Filing No. 1.]  On January 31, 2024, Honda moved for summary judgment.  [Filing No. 51.]  As an initial matter, the Court must address deficiencies in Whorms' summary judgment response.  [Filing No. 57.]  Federal Rule of Civil Procedure 56 and Southern District of Indiana Local Rule 56-1 govern summary judgment procedure in this district.  Under Local Rule 56-1, a movant is obligated to include in its brief a "Statement of Material Facts Not in Dispute" with potentially determinative facts the movant contends are not at issue.  Within 28 days after the motion is filed, the non-moved must file and serve a response brief with a section entitled "Statement of Material Facts in Dispute" that identifies the potentially determinative facts and factual disputes the party contends demonstrate a dispute of fact precluding summary judgment.  *See* S.D. Ind. L.R. 56-1(b).  "The Court will deem facts admitted without controversy to the extent they are supported by admissible evidence and not specifically controverted."  *Hunt v. Kelly Services*, No. 1:20-cv-1521-TWP-MG, 2022 WL 4259946, at *2 (S.D. Ind. Sept. 15, 2022).

Honda filed its Local Rule 56-1(k) statement [Filing No. 54], which put Whorms on notice of his obligation to properly respond to Honda's summary judgment motion.  Nonetheless, Whorms failed to identify admissible material facts in dispute that would preclude summary judgment.  Whorms' response to Honda's motion for summary judgment states in its entirety:

> The defendants claim that Lowring and Vollet saw me with my pants down exposing my underwear along with trying to prevent them from working are complete falsehoods and are lies.  The accusation of me having my pants down was first used by Lundsford as I left her office I thought this accusation erroneous biased and malicious towards me as a Black male, infering that Black males are

more likely to be in a compromising position for misbehavior.[2]  The incident with Lowring and Vollet occurred prior to the conflict with Volleta the following day no attempt by HR was made to meet about this incident.  When Lowring lied to spvsr. Peelman about me starting machinery which was not to be done he apologized to me but did not report the incident to HR.  Vollet Lowring and I worked with each other on several occasions and achieved our 100% production goal many times on one occasion Vollet and I achieved over 200% production quarter.  As for defendants new witness "Michael Evans" I've never encountered this individual.  I've reported incidents of verbal abuse and harassment to Goodard yet he took no action on my behalf, I seek to question these accusers in court to attest to my behavior at Honda Greensburg.

[Filing No. 57, at ECF p. 1-2.]  In submitting or responding to a motion for summary judgment, "[a] party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e).  *See also* Fed. R. Civ. P. 56(c)(1).  Whorms' response brief does not satisfy the requirements of Local Rule 56-1.  His response does not contain the required "Statement of Material Facts in Dispute." Rather, his "disputes" largely consist of unsupported argument.  Honda's reply brief sets forth a helpful chart analyzing every allegation in Whorms' response and detailing why it is insufficient and how it fails to identify any genuine issues of material fact.  [Filing No. 58, at ECF p. 5-8.]

Whorms fails to identify any admissible evidence disputing any of the facts identified by Honda.  Moreover, his response cannot be considered an admissible affidavit or declaration for purposes of Fed. R. Civ. P. 56(c)(1)(A) because it is neither sworn nor verified under the penalty of perjury.[3]  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

---

[2] Notably, while Whorms referenced a comment from a colleague related to his national origin during his deposition, discussed below, his response to Honda's summary judgment motion contains no accusations of bias toward him based on his national origin, only his race.

[3] Whorms' complaint also is not verified.  Moreover, he did not submit a statement of claims, as required by the Case Management Plan.  [Filing No. 36, at ECF p. 6.]

by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, "it is also well established that *pro se* litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

Honda's statement of material facts is therefore not in dispute and is supported by admissible evidence, including Whorms' deposition. [Filing No. 52-1.] Therefore, the Court accepts Honda's statement of material facts not in dispute for purposes of ruling on its motion. However, the Court considers those facts in the light most favorable to Whorms. *See, e.g.,* *Crawford v. Martin*, No. 1:20-cv-2823-SEB-TAB, 2023 WL 2330710, at *1 (S.D. Ind. March 2, 2023) ("When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party." (*citing Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021)).

**B.    Factual Background**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, are presented in the light most favorable to Whorms as the non-moving party. *See, e.g., Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). On September 25, 2020, Kelly Services, a staffing company, hired Whroms and placed him at Honda's Greensburg, Indiana plant as a temporary associate in the Body Manufacturing department. [Filing No. 52-1, at ECF p. 2.] On July 19, 2021, Honda hired Whorms as a full-time associate. [Filing No. 52-1, at ECF p. 7.] While working at Honda, Whorms worked with Joshua Peelman, Team Coordinator, and Peelman reported to Ryan Goddard, Team Manager. [Filing No. 52-1, at ECF p. 6.] On August 12, 2021, Goddard became aware that Whorms was acting aggressively toward his co-associates, refusing to move out of their way while they were trying to work, and had his

4

pants undone and slightly down, exposing his undergarments.  [Filing No. 52-3, at ECF p. 1.] When Goddard approached Whorms about his behavior, Whorms started yelling and raising his hands to Goddard's face, making Goddard feel very uncomfortable.  [Filing No. 52-3, at ECF p. 1.]

Goddard called Clay Hunt, Shift Responsible Associate, to share his concerns.  [Filing No. 52-3, at ECF p. 2.]  Hunt and Goddard reported Whorms' inappropriate behavior to Eva Lunsford, Associate Relations.  [Filing No. 52-3, at ECF p. 2.]  Lunsford informed Whorms that he was being suspended with pay, pending an internal investigation into his behavior.  [Filing No. 52-2, at ECF p. 2.]  Lunsford concluded her investigation, which substantiated the allegations of Whorms' inappropriate behavior.  [Filing No. 52-2, at ECF p. 2.]  Lunsford determined that Whorms' inappropriate behavior violated Honda's Associate Expectations and Responsibilities policy, which required all employes to "[t]reat all team members with respect and . . . not engage in conduct that could be considered as harassing, intimidating, or that constitutes unlawful discrimination or harassment."  [Filing No. 52-2, at ECF p. 3.]  Based on Whorms' violation of Honda's policy, Honda terminated Whorms' employment.  [Filing No. 52-2, at ECF p. 3.]  As part of Lunsford's investigation, she considered the outcomes of investigations of other Honda associates who engaged in similar inappropriate behavior to Whorms.  [Filing No. 52-2, at ECF p. 3.]  The two associates listed as "separation" in Lunsford's "Consistency Check" chart are Caucasian.  [Filing No. 52-2, at ECF p. 3.]

III.    **Discussion**

A.    **Race and national origin discrimination claim**

Honda argues that it is entitled to summary judgment as to Whorms' race and national original discrimination claims. Whorms claims Honda terminated him based on his race and national origin in violation of Title VII. To survive summary judgment, Whorms must present evidence that "would permit a reasonable factfinder to conclude that [Whorms' race or national origin] caused the discharge or other adverse employment action." *Ortiz v. Werner Enterps., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Honda argues that Whorms cannot prevail on his claim for race and national origin discrimination because he has admitted Honda did not discriminate against him based on his race or national origin, which is fatal to his claims. [Filing No. 53, at ECF p. 8.]

This argument is based on a default admission, as Whorms did not respond to the requests for admission sent by Honda. Federal Rule of Civil Procedure Rule 36(a)(3) states that "[a] statement in a request for admission is deemed admitted if not responded to within 30 days of service." Although the Court is cognizant of the unique challenges a *pro se* litigant faces, it is well established that a plaintiff's *pro se* status does not afford him the right to ignore the federal rules and procedural requirements. *See, e.g., Pearle Vision, Inc.*, 541 F.3d at 758.

> Under Rule 36, default admissions may serve as the factual foundation for summary judgment. Summary judgment is properly granted against the party who makes no response to a request to admit as to undisputed material facts supporting such a judgment. The Court thus takes the admitted facts as true for purposes of summary judgment and turns to the legal arguments before the Court.

*Fong v. Lehman Bros. Holdings*, No. 2:12-CV-386-PRC, 2014 WL 5026750, at *3 (N.D. Ind. Oct. 7, 2014). *See also Meece v. Ray's, LLC*, No. 1:15-cv-00144-JMS-MJD, 2016 WL 3403305,

6

at *6 (S.D. Ind. June 21, 2016) ("The fact that [the plaintiff] is *pro se* does not excuse his failure to respond or spare him from the effect of Rule 36(a)(3).").

Whorms did not request that the Court set aside his default admission or in any way acknowledge Honda's arguments regarding admission. Thus, Whorms admitted—by failing to respond to Honda's requestions for admission—to the facts as presented by Honda. Moreover, Whorms admitted that other employees were not treated better than him. [*See* Filing No. 52-5, at ECF p. 2. ("To date, Plaintiff has not responded to Defendant's First Set of Requests for Admission.")]. Therefore, based on Whorms' default admission that Honda did not discriminate against him based on his race or national origin, summary judgment is appropriate on his discrimination claims.

Even without this admission, Whorms cannot prevail on his discrimination claims because he cannot establish a *prima facie* case of discrimination. To prevail on his Title VII discrimination claims, Whorms must establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of his protected class were treated more favorably. *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 606 (7th Cir. 2022). If Whorms establishes his pri*ma facie* case, the burden shifts to Honda to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden would shift back to Whorms to submit evidence demonstrating that Honda's explanation is pretextual. *Id.*

Whorms' *prima facie* case fails because (1) he was not meeting Honda's legitimate employment expectations; and (2) he cannot name a similarly situated comparator who was treated more favorably. The Court first addresses whether Whorms was meeting Honda's

legitimate expectations.  Honda's "Associate Expectations and Responsibilities policy" clearly states that associates are required to "[t]reat all team members with respect and do not engage in conduct that could be considered as harassing, intimidating, or that constitutes unlawful discrimination or harassment."  [Filing No. 52-1, at ECF p. 30.]  Whorms understood that if he violated the policy, he could be subject to corrective action, up to and including termination.  [Filing No. 52-1, at ECF p. 9.]  Following reports of inappropriate conduct from Goddard and Hunt, Lunsford's investigation substantiated the allegations against Whorms, and she concluded that his inappropriate conduct violated Honda's policy.  [Filing No. 52-2, at ECF p. 3.]  Whorms' summary judgment response contains no more than conclusory statements unsupported by specific facts or record evidence.  This does not create a genuine issue of material fact.  *See, e.g., Vazquez v. Eli Lilly and Co*., No. 1:12-cv-139-TWP-DML, 2013 WL 5348542, at *3 (S.D. Ind. Sept. 24, 2013) ("[T]he Court cannot consider those alleged facts which are conclusory statements not supported by specific facts, legal conclusions, and testimony not based on personal knowledge.").  Therefore, Whorms cannot prove that he was meeting Honda's legitimate employment expectations to establish his *prima facie* case of discrimination.

The Court now turns to whether Whorms can identify any similarly situated employee outside his protected class that was treated more favorably.  A similarly situated employee is one who is "directly comparable to [Plaintiff] in all material respects." *Patterson v. Avery Dennison Corp*., 281 F.3d 676, 680 (7th Cir. 2002).  *See also Simpson v. Franciscan Alliance, Inc*., 827 F.3d 656, 661 (7th Cir. 2016) ("Although comparators do not have to be identical in every conceivable way, they cannot be 'similarly situated' unless they are directly comparable in all material aspects.").  When asked in his deposition why he believes he was discriminated against based on his race, Whorms testified: "Because—all the incidents I had was with Caucasians, and

none of them were ever disciplined or retained or brought to the HR office except myself."
[Filing No. 52-1, at ECF p. 17.]  Whorms explained that this testimony referred to employees
Brandon Vollet, Marabel Lowring, Tim Basey, and Mindy Myers.  [Filing No. 52-1, at ECF p.
17.]  However, Whorms conceded he does not have any personal knowledge regarding whether
those individuals were disciplined by Honda, and he admitted that he has no knowledge or
evidence that other employees were treated better than him.  [Filing No. 52-1, at ECF p. 18.]
"While [Whorms] is entitled, as the nonmoving party, to all reasonable inferences in [his] favor,
inferences that are supported by only speculation or conjecture will not defeat a summary
judgment motion." *Herzog v. Graphic Packaging Int'l Inc*., 742 F.3d 802, 806 (7th Cir. 2014)
(internal citation and quotation marks omitted).  Moreover, during Lunsford's investigation of
Whorms' inappropriate behavior, she considered the outcomes of investigations regarding other
Honda associates who engaged in similar inappropriate behavior to Whorms.  The two associates
terminated for similar behavior as Whorms are Caucasian.  [Filing No. 52-2, at ECF p. 3.]
Because Whorms cannot identify a similarly situated employee who was treated more favorably
than he was, he cannot establish a *prima facie* case of discrimination.

Additionally, Honda had a legitimate, non-discriminatory reason for terminating Whorms'
employment, and there is no evidence of pretext.  "Pretext is more than a mistake on the part of
the employer; it is a phony excuse." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561
(7th Cir. 2004).  Following the reports of Whorms' inappropriate behavior, Lunsford's
investigation substantiated that Whorms' inappropriate conduct violated Honda's policy.  It is not
enough for Whorms to simply deny engaging in the inappropriate conduct that led to his
termination.  He must also offer evidence to warrant a trial on the issue of whether Honda
honestly believed he engaged in the conduct.  This he cannot do, as he has no evidence and thus

cannot prove that Honda's legitimate, non-discriminatory reason for his termination was pretext for unlawful discrimination.  *See, e.g., Solache v. Nissan Forklift Corp.*, 153 F. App'x 389, 391 (7th Cir. 2005) ("[W]hether the results of [an] investigation were accurate is irrelevant as long as [the employer] honestly believed its conclusions when it decided to terminate [the employee.]").

### B.      Hostile work environment claim

Whroms' hostile work environment claim also fails as a matter of law.  In order to prevail on a claim for hostile work environment, Whorms must demonstrate that (1) he was subject to unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was so severe or pervasive that it altered the conditions of his employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability. *Smith v. Illinois Dep't of Transportation*, 936 F.3d 554, 560 (7th Cir. 2019).  Whorms cannot meet any of these elements.

First, as noted above, Whorms admitted, by default, that he was not harassed at Honda based on his race or national origin.  However, even without this admission, Whorms simply has not alleged he was subject to any unwelcome harassment based on his race or national origin, or that the alleged harassment was so severe or pervasive as to alter the conditions of his employment.  Whorms testified that he had "little incident[s]" with the four coworkers identified above: Lowring, Vollet, Basey, and Myers.  [Filing No. 52-1, at ECF p. 17.]  Regarding the incident with Lowring, Whorms testified that she "lied on [him] about an incident in which she caused."  [Filing No. 52-1, at ECF p. 10.]  Whorms claimed that Lowring caused the line to shut down but blamed him for it.  [Filing No. 52-1, at ECF p. 10-11.]  Whorms told Lowring, "I don't appreciate you lying [on] me" and she did not respond to him.  [Filing No. 52-1, at ECF p. 11.] Whorms further testified that he was only upset with Lowring because she lied on him and they

"worked very good together" before and after this incident.  [Filing No. 52-1, at ECF p. 12.] Whorms does not allege that Lowring made any comments to him about race or national origin.

Whorms' allegations related to Vollet and Basey also fail to assert any comments about race or national origin.  Whorms testified that Vollet became upset with him when Whorms missed two cycles and raised his hands in the air, saying "perfect, perfect," and called him a "slow ass MF."  [Filing No. 52-1, at ECF p. 13.]  Whorms admitted that he and Vollet worked well together prior to that incident, and he does not allege that Vollet made any comments to him about his race or national origin.  Whorms further testified that Basey said, "Hey—why don't you stop [f-ing] up around here" after a machine shut down where Whorms was working.  [Filing No. 52-1. At ECF p. 18.]  Whorms also testified that Basey was rude, aggressive, and belligerent with him when he was employed by Kelley Services.  [Filing No. 52-1, at ECF p. 19.]  Once again, however, Whorms does not allege that Basey made any comments to him about race or national origin.  Thus, none of these alleged incidents support Whorms' hostile work environment claims.  *See, e.g., Lowery v. DeJoy*, No. 1:21-cv-1871-JPH-MKK, 2023 WL 3791467, at *5 (S.D. Ind. June 2, 2023) (granting summary judgment when alleged comments were "factually race-neutral" and no jury could reasonably infer the comments were based on race to create a hostile work environment).

Whorms alleges only one comment where his co-worker, Mindy Myers, allegedly referenced his national origin.  Whorms alleges Myers said, "you're Jamaican, where's the jerk chicken?"  [Filing No. 52-1, at ECF p. 18.]  Whorms admitted during his deposition that he did not report Myers' comment to anyone at Honda.  [Filing No. 52-1, at ECF p. 18.]  Whorms characterized Myers' comment as "silly, little nonsense that I find offensive anyway."  [Filing No.

52-1, at ECF p. 18.] This comment, while understandably offensive to Whorms, is insufficient to create a hostile work environment.

In order to be actionable harassment, a work environment must have been both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive, and the victim in fact did perceive it to be so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The Seventh Circuit has held that "[i]insults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance." *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022). *See also Lowery v. DeJoy*, No. 1:21-cv-1871-JPH-MKK, 2023 WL 3791467, at *4 ("To determine whether conduct constitutes an objectively hostile work environment, the Court must assess the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." (Internal citations and quotation marks omitted)). Myers' single, off-color comment does not create a hostile work environment, and the other comments have no connection to race or national origin. Therefore, Whorms' hostile work environment claim fails.[4]

---

[4] In addition, Honda has a policy against harassment and provides avenues to report any allegations of harassment. Yet Whorms admits by default that he did not report or complain of harassment to any person at Honda. [Filing No. 52-5.]

## IV.    Conclusion

There is simply no evidence before the Court to permit Whorms' allegations to move

forward.  Accordingly, for the reasons more fully set forth above, Honda's motion for summary

judgment [Filing No. 51] is granted.

Date: 3/28/2024

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MICHAEL PATRICK WHORMS
215 Manning St. Apt. D
Piqua, OH 45356